UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA DAVIS,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

Case No. 1:18-cv-1309

Hon. Janet T. Neff

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of December 28, 2015. PageID.214. Plaintiff identified her disabling conditions as depression, anxiety, diabetes, fibromyalgia, chronic pain, migraines, tinnitus, and right apical lung nodule. PageID.217. Plaintiff had past employment as a software specialist, shipping and receiving manager, and call center manager. PageID.53-54, 218. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 18, 2018. PageID.46-55. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.    LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 28, 2015, and that she meets the insured status requirements of the Social Security Act through June 30, 2020. PageID.48. At the second step, the ALJ found that plaintiff had severe

impairments of migraines, diabetes, myalgias, affective disorder, and anxiety disorder. PageID.48. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.48.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). The claimant could lift and carry up to 50 pounds occasionally and 25 pounds frequently. She could sit, as well as stand and/or walk, for six hours in an eight-hour workday. Regarding the claimant's work environment, she should avoid concentrated exposure to bright lighting, flashing lights, extreme temperatures, loud noises, fumes, odors, dusts, gases, poor ventilation, and hazards. As for her mental capacity, the claimant is capable of understanding, remembering, and carrying out simple, routine, unskilled tasks and instructions. She could maintain adequate attention and concentration for such tasks. She could interact appropriately with coworkers and supervisors but could tolerate only occasional interaction with supervisors and the public.

PageID.50. The ALJ also found that plaintiff was unable to perform her past relevant work. PageID.53.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the medium exertional level in the national economy. PageID.54-55. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as detailer (60,000 jobs), laundry worker (200,000 jobs), and packager (300,000 jobs). PageID.54-55. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from December 28, 2015 (the alleged onset date) through April 18, 2018 (the date of the decision). PageID.55.

### III.    DISCUSSION

Plaintiff set forth two errors on appeal:

**A.    The ALJ's Step Three conclusion is not supported by substantial evidence given that the ALJ failed to properly assess**

4

**Plaintiff's impairments, failed to properly consider the combined effects of Plaintiff's multiple impairments in light of her obesity that was not considered by the ALJ, and no medical expert rendered a proper, supported opinion with regard to medical equivalence consistent with the entire record.**

1.   **Listed impairments**

Plaintiff contends that the ALJ failed to properly address Step Three of the sequential evaluation.[1]  A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments."  *Id.*  An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment.  20 C.F.R. § 404.1525(d).  A claimant does not satisfy a particular listing unless all of the requirements of the listing are present.  *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir. 1987).  *See, e.g., Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency").  If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

---

[1] The Court notes that plaintiff's brief raises numerous arguments contesting the ALJ's decision which do not address step three.  The Court has limited its discussion to the alleged error at step three.

### a. Physical impairments

At step three, the ALJ stated that "Although the claimant has impairments that are considered severe, there is little to no medical evidence in the record to support a finding that the claimant's impairments, singly or in combination, meet or equal the requirements set forth in the Listing of Impairments (Appendix 1, Subpart P, 20 CFR, Part 404)." PageID.48.  Here, plaintiff has not developed any argument to demonstrate that the ALJ failed to find that her condition meets, or is equivalent to, any particular listing.  Plaintiff essentially asks this Court to perform a *de novo* review of step three, *i.e.*, evaluate her conditions (*e.g.*, obesity, sleep apnea, diabetes, fibromyalgia with trigger points, "cervical, thoracic, and lumbar spine pain," "rib, arm, and shoulder pain," "widespread chronic pain," fatigue, irritable bowel syndrome, and "joint pain especially in her hips and knees") and then determine that these conditions meet or equal a listed impairment.  Plaintiff's Brief (ECF No. 12, PageID.529-534).  In this regard, plaintiff makes no effort to address any particular listed impairment.  These are arguments that should have been made to the ALJ.  This Court does not review the evidence de novo, make credibility determinations or weigh the evidence.  *Brainard*, 889 F.2d at 681.  Accordingly, plaintiff's claim of error should be denied.

### b. Mental impairments

Plaintiff disagrees with the ALJ's determination that she did not meet the requirements of Listing 12.04 (depressive, bipolar and related disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders).  The ALJ addressed the listings as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  A marked limitation means functioning in this area

6

independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

The claimant has the following degree of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting or maintaining pace; and no limitations in adapting or managing oneself.  The claimant alleged that she has problems with memory, concentration, task completion, understanding, following instructions, and getting along with others.  She reported that she can typically pay attention for up to 15 minutes.  She is able to follow written instructions, as long as the instructions are simple with few steps.  For spoken instructions, she reported that she makes many notes in order to follow them. Ex. 4E.  Despite the claimant's allegations, the medical evidence suggests that her mental symptoms are controlled with medication. The claimant demonstrated normal motor activity, adequate insight, and appeared well organized. He [sic] exhibited adequate judgment and performed well on serial sevens, calculations, and had an adequate fund of information. In spite of a depressed mood, the claimant's mental activity was spontaneous and well organized. Ex. 5F, 8F.  Accordingly, the undersigned finds that the claimant has the degree of limitation noted above.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

PageID.49.

In addition, the ALJ explicitly considered and discussed the combined effects of plaintiff's impairments stating:

7

> As a threshold matter, the undersigned is cognizant of the substantial overlap in symptomology among different mental impairments, as well as the inherently subjective nature of mental diagnoses. Accordingly, the undersigned has considered the claimant's psychological symptoms and their effect on functioning together, instead of separately, regardless of the diagnostic label attached. As a reference, the claimant has a history of depression and anxiety. 2F, 8F. For the most part, she has not received treatment for her mental health conditions since her alleged onset of disability, other than taking prescribed medications for anxiety. Ex. 2F. She reported complaints of depression, anxiety, and difficulty sleeping. Ex. 3F/17. To a consultative examiner, she reported that she has suffered from symptoms of depression and anxiety for at least ten years. She also described severe social anxiety. Ex. 8F/1. However, in June 2015, prior to the alleged onset of disability, the claimant's anxiety was described as controlled. Ex. 4F/40. During a consultative examination, the claimant demonstrated normal motor activity, adequate insight, and appeared well organized. He [sic] exhibited adequate judgment and performed well on serial sevens, calculations, and had an adequate fund of information. In spite of a depressed mood, the claimant's mental activity was spontaneous and well organized. These findings were consistent with others throughout the record. Ex. 5F, 8F.

PageID.52.

Plaintiff contends that "[t]he ALJ's cursory statements as to mental impairments failed to consider all evidence," and that the ALJ did not consider plaintiff's stress. Plaintiff's Brief at PageID.534. Plaintiff's characterization of the ALJ's decision with respect to Listings 12.04 and 12.06 is not accurate. The ALJ explained why plaintiff's impairments did not meet the requirements of Listings 12.04 and 12.06. Accordingly, plaintiff's claim of error should be denied.

> **B.    The ALJ's RFC is not supported by substantial evidence given that (1) the ALJ relied on an RFC by a non-physician single decision maker (SDM) without the benefit of a medical expert assessment of Plaintiff's physical RFC; (2) the RFC is not based upon consideration of all relevant evidence and is incomplete, (3) the mental RFC is not consistent with the evidence and is not based on the entire record, and (4) the ALJ failed to build a logical bridge between the evidence and the assigned RFC.**
>
> **1.    Single decision maker (SDM)**

Plaintiff contends that the ALJ erred because "[t]he ALJ's decision implicitly relied upon the physical RFC by the non-physician SDM leading to the ALJ fashioning her own RFC." Plaintiff's Brief at PageID.536.  Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis.  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

"[T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir. 2013).  Courts recognize that ALJs are not physicians.  *See, e.g., Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) ("[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms") (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999)).  As one court explained:

> The Commissioner's determination must be based on testimony and medical evidence in the record.  And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996).  In short, "the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir.2006).

While the ALJ's RFC determination must be supported by substantial evidence, it is not necessary that this determination be consistent with an RFC offered by a particular physician. *See Mokbel-Aljahmi v. Commissioner of Social Security*, 732 Fed. Appx. 395, 401 (6th Cir. 2018)

9

(the Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ"). "[T]he Commissioner has final responsibility for deciding an individual's RFC, SSR 96–5p, 1996 WL 374183 (July 2, 1996), and to require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Rudd*, 531 Fed. Appx. at 728.

Here, the ALJ did not explicitly state that she adopted the SDM's determination that plaintiff could occasionally "lift and/or carry" 50 pounds and frequently "lift and/or carry" 25 pounds. PageID.129. The SDM's finding is consistent with the RFC that plaintiff could perform the lifting requirements of medium work. *See* 20 C.F.R. § 404.1567(c). That being said, the ALJ does not state how she concluded that plaintiff had the RFC to perform the exertional requirements of medium work. The ALJ could not have gleaned this from plaintiff's past employment, because the vocational expert defined the exertional requirements of that employment as sedentary or light work. PageID.53-54. The ability to perform sedentary or light work is consistent with plaintiff's testimony that she would lift or carry about 10 to 20 pounds during her past employment. PageID.66-70. The ALJ did not address any consultative examination opinion which stated that plaintiff could perform the exertional requirements of medium work. In this regard, the consultative examination performed by Dr. Simpson did not address plaintiff's ability to lift any particular weight. PageID.474-478. While the ALJ is not required to base her RFC finding on a physician's opinion, *see Rudd*, 531 Fed. Appx. at 728 and *Mokbel-Aljahmi*, 732 Fed. Appx. at 401, there is no medical evidence in the record to support the ALJ's determination that plaintiff could

10

perform work at the medium exertional level, and no explanation as to how the ALJ reached that determination. Accordingly, plaintiff's claim of error should be granted on this claim, and this case should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate whether plaintiff can perform medium work and set forth the factual basis for that determination.

### 2. The RFC based on an incomplete record

While plaintiff lists this as her second error, she does not identify a corresponding argument in the brief or set forth a discussion of how the RFC is based on an incomplete record. To the extent plaintiff is referring to her discussion with respect to the SDM's "lift and/or carry" limitations, that matter was addressed in § II.B.1., *supra*. Accordingly, this statement of error, which is unsupported by argument, should be denied.

### 3. The Mental RFC is not consistent with the evidence

Plaintiff contends that "[t]he ALJ erred by relying upon the mental health assessment by reviewer Tom Ray, Ph.D. in the Initial denial because it is not supported by the medical records or the CE examiner's opinion" and that "Dr. Ray eschewed CE/Dr. Kitchen's opinion that Plaintiff's prognosis was poor." Plaintiff's Brief at PageID.537. Dr. Ray's May 16, 2016, opinion appears in Exhibit 1A, with a signature page in Exhibit 10F. PageID.131-135, 486-487. The record reflects that the ALJ reviewed the May 4, 2016 opinion of examining psychologist Paul Kitchen, Ph.D. (identified as Exh. 8F, PageID.480-484) both at step three and in evaluating Dr. Ray's opinion. The ALJ addressed Dr. Ray's opinion as follows:

> Psychological Disability Determination Services consultant Tom Ray, Ph.D., opined that the claimant has limitations in her abilities to understand and remember, sustain attention and concentration, interact socially, and adapt. Dr. Ray determined that the claimant has mild to moderate limitations in the four domains associated with the paragraph B criteria of the mental listings. Mental status examination findings consistently supported this degree of limitations. The

>claimant demonstrated normal motor activity, adequate insight, and appeared well organized. He [sic] exhibited adequate judgment and performed well on serial sevens, calculations, and had an adequate fund of information. In spite of a depressed mood, the claimant's mental activity was spontaneous and well organized. Ex. 5F, 8F. In light of these generally unremarkable examination findings, the limitations Dr. Ray considered are consistent with the objective evidence. Thus, the undersigned assigns the opinion great weight.

PageID.52-53. As discussed, the ALJ adopted Dr. Kitchen's opinion at step three and cited a portion of that opinion as supportive of Dr. Ray's opinion. Based on this record, the ALJ did not "eschew" Dr. Kitchen's opinion. Accordingly, plaintiff's claim of error should be denied.

### 4. ALJ's articulation of RFC

Plaintiff contends that "the ALJ interpreted Dr. Simpson's raw medical data in the form of range of motion measurements and afforded providers' records little weight; thus, the ALJ failed to build a logical and accurate bridge between the evidence and the RFC." Plaintiff's Brief at ECF No. 539. This argument appears to be another iteration of plaintiff's claim that the ALJ "played doctor" in determining plaintiff's RFC. As discussed, the undersigned concluded that the ALJ's finding that plaintiff could perform medium work is not supported by substantial evidence. However, beyond that, plaintiff has failed to demonstrate that the balance of the ALJ's RFC determination is flawed. Accordingly, this claim of error should be denied.

### IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405g. On remand, the Commissioner should re-evaluate whether plaintiff can perform medium work and set forth the factual basis for that determination.

Dated: November 25, 2019         /s/ Ray Kent
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).